## SCUDDY MINING CO. et al. v. MULLINS.

Court of Appeals of Kentucky.

Nov. 6, 1953.

Craft & Stanfill, Hazard, for appellants.

T. E. Moore, Jr., Courtney C. Wells, Hazard, for appellee.

MOREMEN, Justice.

Perhaps some confusion may be avoided if, at the outset, a glossary of the various companies involved in this litigation is presented. They are:

1—Scuddy Coal Company was the organization which, in April, 1934, transferred certain leases and mining property to Scuddy Mining Company.

2—Scuddy Mining Company. All of its stock is owned by C. L. Ryley, his son, C. Reginald Ryley, and Ora Abbott, who are respectively president, vice president, and secretary of the company.

3—Happy Colliers Company. All of the stock of this company is owned by C. L. Ryley, president, C. Reginald Ryley, vice president, and Ora Abbott, secretary.

4—Racoon Coal Company has same ownership and management. (Certain details were not definitely shown by proof, but commissioner so found and no exception was taken.)

5—Happy-Scuddy Mining Company. This company apparently was formed by O. W. Robinson and C. W. Henderson after it purchased certain assets from Scuddy Mining Company.

Appellant, Scuddy Mining Company, operated a coal mine in Perry County. On May 12, 1944, appellee, Ishmael Mullins, an

employee of appellant, Scuddy Mining Company, sustained an injury in the course of his employment. Neither he nor the company had elected to operate under the terms of the Workmen's Compensation Act. The parties agreed, however, that Mullins should be paid for his disability according to the provisions of the Act. Payments were begun immediately at the rate of $15 per week.

In September, 1944, at a special meeting of the stockholders and directors of the corporation, appellant, C. Reginald Ryley, reported to the meeting that he was negotiating the sale of all the mining property of the company to O. W. Robinson and C. W. Henderson (who later formed the Happy-Scuddy Company) for approximately $65,000; about $15,000 to be paid in cash and the balance with a series of notes which would become due over a period of about 5 years. He was authorized to proceed with the negotiations and to consummate the sale and transfer the property, if possible, on the best terms he could obtain.

On October 3, 1944, at another special meeting, C. Reginald Ryley presented a contract of sale of the property of the mining company and the meeting approved its terms. C. Reginald Ryley was authorized to pay proper and just obligations of the company and to wind up its affairs. He was further instructed to pay the indebtedness and obligations in accordance with their priority if the proceeds of the sale of the company's assets proved to be insufficient to pay all indebtedness. The following proceedings were also reported in the minutes of that meeting:

"C. L. Ryley called to the attention of the meeting that C. Reginald Ryley personally held as assignee, the mortgage of Scuddy Coal Company to First National Bank & Trust Company of Lexington, Kentucky dated October 29, 1930, securing Scuddy Coal Company's notes in the principal amount of $22805.00 and that when purchasing Scuddy Coal Company the Scuddy Mining Company had assumed and agreed to pay the balance due upon these notes,

but had been unable to do so. Therefore, in view of the priority of this claim, upon motion duly made, seconded and carried, C. Reginald Ryley was directed to assign himself individually a sufficient number of notes of the Happy Scuddy Coal Company etc. to secure the payment of the mortgage indebtedness due him."

In accordance with the resolution, the company assigned its lease and conveyed its holdings to the corporation known as Happy-Scuddy Mining Company for the purchase price of $65,000. $15,000 was paid in cash and the balance of the deferred purchase money was represented by eleven consecutively numbered interest bearing notes, ten of which were for the sum of $4,500 each, and note No. 11 was for the sum of $5,000.

In the meantime, appellee, Ishmael Mullins, was paid compensation from the date of his injury on May 12, 1944, for a period of about 90 weeks at which time the Scuddy Mining Company refused to make further payments, and, pursuant to agreement between the parties, the matter was submitted to the Compensation Board of Kentucky for arbitration. The Board found that Mullins was entitled to recover compensation of $15 a week commencing as of May 12, 1944, and continuing for the duration of his total disability, but not to exceed a period of 500 weeks or a total of $7,500 plus interest on all past due installments. The Scuddy Mining Company refused to pay according to the finding of the Board and Mullins instituted suit in the Perry Circuit Court on the agreement and on the award where a judgment was entered requiring Scuddy Mining Company to pay according to the finding of the Board, and an execution was issued on said judgment on the 21st day of March 1950, which was returned "no property found" on March 25, 1950.

In order to learn the reason no property subject to execution had been found, appellee Mullins filed this suit in which he requested a disclosure of all facts concerning the distribution of the assets of Scuddy Mining Company; charged that C. Reg-

inald Ryley, while acting as trustee for Scuddy Mining Company during the liquidation period, had illegally disbursed certain assets of the company; requested the appointment of a receiver for the company and asked that a special commissioner be appointed to settle the accounts of C. Reginald Ryley.

The special commissioner found (and his conclusions are supported by the evidence) that upon the transfer of the property of Scuddy Mining Company to the Happy-Scuddy Mining Company, $15,000 was paid in cash and the balance of $50,000 was satisfied by the execution of ten notes of $4,500 each and an eleventh note of the principal sum of $5,000.

In connection with the payment of the notes, it was found that the first eight in the principal sum of $46,000 had been retired by payment and the last three notes (numbered 9, 10 and 11) were being held by the receiver.

The record discloses that C. Reginald Ryley, acting in the capacity of liquidating agent, disbursed a considerable amount of money to various creditors of the corporation. Although the proof in this case is not full in detail, certain points were proven in a general way. Between September 15, 1944, and May, 1948, C. Reginald Ryley paid out approximately $28,000 to the creditors of the Scuddy Mining Company. This payment was made out of assets other than those represented by the lien notes. This disposition was made of the notes: The first four notes, representing a face value of $18,000, were assigned to the Happy Colliers Company. Mr. Ryley explained, upon examination, that this was the return of alleged advancements in that amount from the Happy Colliers Company to the Scuddy Mining Company. Notes 5, 6, 7 and 8, also representing a face value of $18,000 were endorsed by Ryley, as vice president and liquidating agent of the Scuddy Mining Company, in payment of an indebtedness of the Scuddy Mining Company to Racoon Coal Corporation. We have noted above that all three of these corporations had interlocking ownership and management. Notes 9, 10 and 11 in the principal sum of $14,000 were endorsed by C. Reginald Ryley, as vice president of the Scuddy Mining Company, to C. Reginald Ryley, in his personal capacity, to reimburse himself for the retirement of the mortgage indebtedness which he had paid to the First National Bank and Trust Company of Lexington, Kentucky, and which notes had been assigned to him by said bank. This is the indebtedness referred to in the excerpt from the minutes of the corporation which is quoted above and which transaction requires further discussion.

C. Reginald Ryley and his father, C. L. Ryley, acting through the Scuddy Mining Company, bought the property of the Scuddy Coal Company which was indebted to the First National Bank and Trust Company of Lexington, Kentucky, as evidenced by a promissory note secured by a mortgage. The Scuddy Mining Company assumed this indebtedness as part of the consideration of purchase. In 1939, C. Reginald Ryley, out of his own funds, paid $8,361.72 to the bank and took an assignment of the note and mortgage. At the time this suit was tried in the circuit court the interest amounted to about $5,500.

Appellant, C. Reginald Ryley, contends that, upon the assignment of the notes and mortgage to him, he had a prior lien on the assets of the Scuddy Mining Company and he transferred notes 9, 10 and 11 to himself for the purpose of satisfying this superior lien.

In the early part of this litigation, appellee, Ishmael Mullins, took the position that, since Scuddy Mining Company had agreed to pay according to the Workmen's Compensation Act, he, too, had a lien under the terms of said Act. However, this position has been abandoned because, as it is stated in the brief, there would have been sufficient funds to pay Mullins as a common creditor if the funds of Scuddy Mining Company had been properly administered.

After the report of the special commissioner and upon submission to the court, a judgment was entered wherein the court

held that C. Reginald Ryley had occupied a fiduciary capacity as trustee for defendant, Scuddy Mining Company and that: (a) it was his duty to pay first liens according to their priority before paying anything to common creditors; (b) he could and should have paid all prior liens against the assets of the Scuddy Mining Company out of the $15,000 cash payment; and (c) the claim of appellee Mullins and other creditors could have been paid out of the money which he paid to himself as a common creditor of the Racoon Coal Company and the Happy Colliers Company. The court further directed the receiver to pay on behalf of Scuddy Mining Company and appellant, C. Reginald Ryley, the sum of $6,150 which was the amount due under judgment appellee had for personal injuries. The case was retained on the docket for purposes of enforcing the judgment and appellants were granted an appeal to this court.

Appellant assigns as grounds for reversal: (a) that appellee's action is barred by the statute of limitations; (b) that appellee was not a creditor of Scuddy Mining Company at the time distribution was made of its assets; (c) that appellant, C. Reginald Ryley, is entitled to be adjudged a lien on notes 9, 10 and 11 and to receive the proceeds thereof in part satisfaction of his indebtedness; and (d) that the judgment recited certain facts which are erroneous.

█ In support of his first ground, appellant points out that C. Reginald Ryley assigned notes 9, 10 and 11 to himself on June 30, 1948, and last payments were made out of cash on hand in May, 1948, and argues that, under KRS 378.060, which reads:

"Any sale, mortgage or assignment made by a debtor and any judgment suffered by a defendant, or any act or device done or resorted to by a debtor, in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others, shall operate as an assignment and transfer of all the property of the debtor, and shall inure to the benefit of all his creditors".

appellee is barred from recovery because KRS 378.070 provides that actions brought under the above section should be commenced within six months after the delivery of the property transferred.

We are not here presented with a case wherein a person attempts to transfer property in order to defeat creditors.

There is no intimation in the record that the Scuddy Mining Company, at the time it decided to liquidate, had contemplation of insolvency or any design to prefer one creditor to the exclusion of others such as will, by the force of law, operate as a general assignment for the benefit of all the creditors of a corporation under the terms of the statute quoted above. We are concerned here with whether the liquidation assignment was administered properly and whether the trustee acted properly in the discharge of his duties after the corporation decided to sell its assets. There is no need to resort to the fiction of an assignment created by KRS 378.060 because here, in fact, the assignment was made by proper action of the board of directors.

In Hazelhurst Lumber Company v. Carlisle Mfg. Co., 130 Ky. 1, 112 S.W. 934, 935, it was said:

"The officers of a corporation hold its funds as trustee for its stockholders and creditors. It is a breach of trust for a trustee to pay his own debt out of the trust fund and leave other debts unpaid. In other words, he is not allowed to get an advantage for himself out of his trust position, and pay his own debts to the prejudice of other creditors."

It is plain from the record that C. Reginald Ryley would have been justified in satisfying his lien notes, which he obtained from the Lexington bank, either out of the $28,000 fund, which was distributed to common creditors of the Scuddy Mining Company, or out of the $15,000 cash payment, which was obtained as part of the sale price for the property of Scuddy Mining Company to Happy-Scuddy Mining Company. But the trustee did not do this. He paid

this money to general creditors. He transferred notes 1, 2, 3 and 4 to Happy Colliers Company and notes 5, 6, 7 and 8 to Racoon Coal Corporation, both of which corporations were owned and operated by his family group and both of which, at most, were common creditors. During all this time, he ignored appellee, Mullins, and it is immaterial whether we view his claim as a preferred one or as one of a common creditor, because his rights as a common creditor were ignored at a time when the rest of the common creditors were being paid.

We believe that KRS 378.060 has no application in this case and, therefore, the statute of limitations contained in KRS 378.070 has no application here.

Appellants next argue that appellee was a mere claimant during the distribution of assets, September 15, 1944, to May, 1948, and at the time of the assignment of the purchase money notes, June 30, 1948, and that he did not become a creditor until the judgment of July 12, 1949. It is not necessary that appellee be a judgment creditor. It is sufficient that appellants and appellee occupy the positions of debtor and creditor. We believe they did because under the agreement between the parties, appellants contracted to pay appellee $15 a week for 90 weeks and subsequent agreements and procedures in this case demonstrate definitely that appellants recognized appellee's claim. Under the facts in this case, claimant and creditor are synonymous.

The next contention is that C. Reginald Ryley is entitled to be adjudged a prior lien on notes 9, 10 and 11 and is predicated upon the idea that appellee Mullins did not become a creditor until July 12, 1949, when he reduced his debt to a judgment. It is insisted that since notes 9, 10 and 11 were acquired by appellant, C. Reginald Ryley, on June 20, 1948, and appellee did not obtain a final judgment of the circuit court on the compensation award until July 12, 1949, Ryley was entitled to a prior lien. This reasoning is based, as we have pointed out in the above paragraph, upon the erroneous assumption that appellee was not a creditor of the company and we believe requires no further discussion.

Finally, appellants argue that the judgment itself contains erroneous statements of fact. It is true that in certain instances the court used words which implied that appellants had made admissions which, in a strict legal sense, were not accurate, but examination of the judgment in its entirety shows that the court thoroughly understood the facts and reached a correct conclusion of law. Item six of the judgment in particular was criticized because the court held that it was the duty of Ryley as trustee to pay first liens according to their priority and before paying anything to common creditors with the result that upon failure to pay his own prior lien out of the $15,000 cash payment or out of the notes which were transferred to Happy Colliers Company and Racoon Coal Corporation, he was estopped to assert his mortgage lien or to apply the proceeds of the deferred purchase money to his superior lien.

We believe the trial court was correct in this holding because if Ryley had exercised and insisted upon the priority of his lien at a proper time and before the common creditors were, in fact, unlawfully paid, his mortgage lien notes could have been properly satisfied. But he did not pursue that course and chose instead to prefer two companies which were owned by himself and his family and, after making this preference, attempt to enforce his lien as a prior claim over another common creditor.

We believe with the trial court that Ryley cannot be now heard to insist that he has the right to enforce his lien on the balance of the undistributed assets of the corporation prior to the payment of the claim of appellee, Mullins.

The judgment is affirmed.